IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID BRYANT WICKS                      *
Plaintiff                               *
v                                       *            Civil Action No. RDB-11-1570
BRENDA SHELL-ELEAZER and                *
TIMOTHY R. FALOON                       *
Defendants                              *
                                      ***

## MEMORANDUM OPINION

On June 13, 2011, this Court directed Defendants to show cause why injunctive relief should not be granted in favor of Plaintiff David Wicks ("Wicks"). ECF No. 3. The Response was filed on June 28, 2011, and was construed as a Motion for Summary Judgment. ECF No. 4 and 5. Wicks has filed a Response in Opposition and the matter is now ripe for dispositive review. ECF No. 7. Also pending is Wicks's Motion for Leave to Proceed in Forma Pauperis which shall be granted. ECF No. 2. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the motion for summary judgment will be GRANTED and judgment will be ENTERED in favor of Defendants.

### Background

At the time his self-represented Complaint was filed Wicks was an inmate held at the Anne Arundel County Detention Center (AADC). He claimed Defendants conspired to keep him on suicide watch for "a couple of weeks," restricted his use of the telephone and access to postage, denied him proper food, denied him access to medications, and improperly denied a transfer to a State hospital. ECF No. 1 at p. 3. In addition Wicks alleged that he was denied needed surgery for repair to a tendon in his right index finger as well as other medical treatment. Wicks states he arrived at AADC suffering from grand mal seizures, frontal lobe damage, liver

cancer, high blood pressure, bleeding hemorrhoids, "right femur bone replacement," bipolar disorder, and glaucoma. ECF No. 1 at p. 4.

Wicks alleges Defendant Shell-Eleazer forced him to remain in the receiving part of the facility, naked, with only a blanket. He was forced to sleep on a cold cement floor with air conditioning turned on in his cell at all times. He claims he was only provided peanut butter and bologna sandwiches for every meal, seven days a week. Wicks alleges he was in severe pain and discomfort and asserts that the food he was provided is contraindicated for someone who has a bad liver. In addition to the conditions of his confinement, Wicks complains that he was denied his right to call a bail bondsman, an attorney, and the local police department (so he could file charges against Defendants), and his mail to the FBI as well as family and friends was not sent. ECF No. 1 at p. 4. Wicks claims he was only permitted one phone call at twelve midnight each night, but no one was available to answer or accept the charges.

Defendants were directed to respond to the claims that Wicks is being denied proper medical care.[1] Wicks arrived at AADC on April 22, 2011; because he suffers a number of mental health issues he was initially assigned to the mental health unit.[2] On May 5, 2011, Wicks was evaluated by a psychiatrist, a treatment plan which included laboratory tests was developed, and medications were prescribed. On May 6, 2011, Wicks refused the tests ordered by the psychiatrist. ECF No. 4 at p. 2.

---

[1] The remaining claims raised in the Complaint fail to state a claim upon which relief may be granted as Wicks does not describe how the conditions under which he was held harmed him in a significant way or how the alleged interference with his mail has curtailed his access to the courts. *See e.g.,* ECF No. 4 at Ex. 3 (showing Wicks has filed over 40 complaints in various federal courts).

[2] An intake interview form also notes that Wicks had recently experienced a car accident, and his grandmother and son had died. According to the form, Wicks also admitted a previous suicide attempt in 2009. ECF No. 4, Ex. 1, p. 1.

On May 10, 2011, Wicks was placed on suicide precautions based on observed self-destructive behavior (jumping from a top bunk) as well as verbalizing his intent to hurt himself and others. ECF No. 4 at Ex. 1, p. 3. On May 14, 2011, Wicks was placed in a restraint chair for approximately 3 hours after he again verbalized intentions of hurting himself or others. *Id.* On May 16, 2011, Wicks was removed from suicide precautions by a psychologist and he was transferred to another housing assignment for short-term evaluation. The following day an assessment performed by the mental health registered nurse revealed an absence of suicidal ideation, but there was still an issue regarding Wicks's failure to adjust to his housing assignment. Records indicate that Wicks admitted to refusing anti-psychotic medication (risperidone) because it made him feel ill. *Id.* On May 19, 2011, Wicks was again evaluated, his concerns regarding side effects were addressed, and an additional medication, Cogentin, was added to his treatment regimen. On May 20, 22, and 23, 2011, Wicks's blood pressure was checked after his blood pressure was measured at 151/110. *Id* at pp. 3 – 4.

Wicks was discharged from the Mental Health Unit on May 24, 2011, and transferred to general population because he was not consistently appropriate with others and was frequently disruptive. It was also noted that he was impulsive and deceptive in his interactions with others. At the time he was discharged, Wicks was not exhibiting any acute psychiatric symptoms. ECF No. 4, Ex. 1, p. 4. Later that month Wicks was again evaluated and was advised that his treatment plan included mood stabilizing medications as well as an antipsychotic medication, Risperidone. Due to Wicks's past refusal to take Risperidone, however, another antipsychotic medication, Thorazine, was provided. Wicks was advised that if the medication effected his behavior in a positive way, he could be transferred from general population back to the mental health unit again as he had requested. *Id.* Although Wicks complained to staff that he needed

3

surgery on his right finger, it was noted that no intervention, other than analgesics, was required. On June 14, 2011, Wicks was evaluated by a psychiatrist and told the doctor that he was not taking the prescribed Thorazine because it made him dizzy. Additionally, Wicks stated that he had liver cancer and had undergone chemotherapy in the past. ECF No. 4 at Ex. 1, p. 5. Defendants maintain that Wicks was given proper treatment during his brief stay at AADC; that his Veteran's Administration (VA) records did not indicate he suffers all of the health problems he claimed; and that his primary issue has been non-compliance with psychiatric medications.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992), *citing Martin v. Gentile*, 849 F. 2d 863, 870 (4th Cir. 1988).

In order to state a constitutional claim for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier*, 896 F.2d at 851. Reckless disregard occurs when a Defendant "knows of and disregards an excessive risk to inmate health or safety; the [Defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998). Mere

negligence or malpractice does not rise to a constitutional level. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Wicks's main objection to the course of treatment chosen appears to be the failure to obtain medical records from every correctional facility and hospital he has been committed to in the past. ECF No. 7. He lists twenty facilities where he was confined in the past which Defendants failed to contact for records. *Id.* at p. 5. He also alleges that he was not provided with adequate tests to verify his medical complaints. He asserts that all records should have been obtained and reviewed and medical tests provided during his stay at AACDC, which began April 22, 2011 and ended August 11, 2011. ECF No. 8. Defendants' failure to comply with Wicks's requirements is not a violation of his constitutional rights.

First, Wicks was only there for four months. Given the transitory nature of the population, it is unreasonable to expect that every medical record from every facility would be obtained and extensively reviewed for each detainee. Second, there was no objective evidence that Wicks suffered from hypertension, liver cancer or glaucoma. Indeed, his claim regarding hypertension and glaucoma was refuted by VA medical records. ECF No. 4 at Ex. 1. Notwithstanding the lack of evidence, Wicks was given blood pressure checks to insure he was not hypertensive. The fact that every request for medical tests were not approved does not reflect deliberate indifference.

To the extent some of Wicks's many complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). His numerous grievances with the medical decisions made regarding what tests and treatments are necessary in light of the symptoms presented reflect his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper

medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985), *citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970). There are no exceptional circumstances alleged in this case.

There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir.1977).

It is undisputed that Wicks was provided with medication to address his psychiatric condition. Whether Wicks complied with all of the medication provided is not material. Wicks asserts that this Court should direct Defendants to explain why he never had a problem in general population at any other prison he has been in. ECF No. 7. The Court presumes Wicks is claiming that his segregation was unnecessary; however, in the same document Wicks claims that two other prisoners at the detention center forged his signature on documents. The decision to place Wicks on suicide precaution was based on his observed behavior and statements. There is no evidence that Wicks was put on that status in an effort to punish him, in violation of his Fourteenth Amendment rights.

**Conclusion**

The claims raised by Wicks do not state a constitutional violation.   Defendants are

entitled to summary judgment in their favor.  A separate Order follows.

_SEPTEMBER 22, 2011_
Date

_Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

8